FILED
9/11/2026
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

OXYGEN FORENSICS, INC.,
*Plaintiff / Counter-Defendant,*

v.

Civil Action No. 1:26-CV-02826-RDA-LRV

MAX WEISSBERG,
*Defendant / Counter-Plaintiff.*

# DEFENDANT'S ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Max Weissberg, appearing pro se, answers the Complaint as follows. Unless a paragraph is expressly admitted, it is denied. Headings in the Complaint are not allegations and require no response. Any allegation not specifically admitted is denied.

Note on numbering. Defendant has not been provided a separately paginated Complaint in the materials used to prepare this Answer. The numbered responses below track the factual narrative Plaintiff used in its Brief in Support of Preliminary Injunction (ECF No. 6) and the two counts described in that Brief and in the Motion (ECF No. 5). If the stamped Complaint uses different paragraph numbers, these responses apply to the corresponding allegations. Defendant will serve an amended Answer conforming to the Complaint's numbering upon request or court order.

Exhibit A, attached, is Defendant's September 10, 2026 memorandum to OFAC and BIS concerning OOO "MKO Systems." It is offered as the petition and source compilation referenced in this Answer, not as a substitute for proof at trial.

## I. PRELIMINARY STATEMENT

This case is an attempt to use defamation and tortious-interference labels to stop a former employee from speaking to federal authorities, Congress, and the public about the provenance and government-customer use of forensic extraction software. That is not a proper use of this Court. Defendant denies that he extorted Plaintiff, invented a false corporate story, or waged a campaign of commercial falsehoods.

## II. RESPONSES TO ALLEGATIONS

### Parties, jurisdiction, and Plaintiff's business

1. Defendant lacks knowledge or information sufficient to form a belief as to the internal details of Plaintiff's customer investigations and therefore denies those allegations except as follows: Defendant admits Plaintiff is a Virginia corporation with a principal office in Alexandria, Virginia, that sells digital-forensics software to government and commercial customers, and that Plaintiff's Rule 7.1 disclosure states Plaintiff is owned by Oxygen Forensics LTD, a company organized under the laws of the Republic of Cyprus.
2. Defendant admits that trust of government purchasers matters to Plaintiff's business. Defendant denies any implication that raising supply-chain or provenance questions is therefore unlawful.
3. Defendant admits he speaks Russian, attended the American Film Institute directing program, has worked as a museum tour guide, and has produced films. Defendant denies the characterization of a "preoccupation with Russia" offered as evidence of bad motive.
4. Defendant denies that he "taught himself" Russian. Defendant formally studied Russian, including study at Herzen University in St. Petersburg. Defendant admits he wrote and directed a film on organized crime in Russia that screened at the 2024 Moscow International Film Festival after an invitation connected with that festival, and that a

Russian-language version was later distributed. Defendant denies that those artistic activities prove the defamation or interference claims.

5. Defendant admits he was hired by Plaintiff as a Marketing Campaign Specialist in December 2023 (on or about December 20, 2023) and that his employment ended on October 17, 2025.
6. Defendant denies that he "inexplicably began to exhibit erratic and disruptive behavior." Defendant admits he raised workload, staffing, and compensation issues and that those discussions were contentious. Defendant denies that he demanded the firing of colleagues as alleged, except to the extent he criticized management of the marketing function. Defendant denies any characterization that converts workplace complaints into a predicate for this lawsuit.
7. Defendant admits he discussed resignation and termination during those disputes. Defendant denies the remainder.
8. Defendant denies that he attempted to extort Plaintiff or demanded $210,000 in exchange for an agreement not to disseminate "defamatory information." Defendant admits he told Plaintiff he would report deceptive practices and national-security concerns to law enforcement and "whistleblow," which he had already done prior to the conversation date. Any discussion of money is denied as Plaintiff characterizes it. Defendant retained two work laptops as physical evidence for those reports; he denies conversion or that retention was for personal use.
9. Defendant admits Plaintiff issued a termination letter dated October 16, 2025, and that employment ended October 17, 2025. Defendant denies the stated grounds.

10. Defendant admits Plaintiff sued him in New York Supreme Court, Oxygen Forensics, Inc. v. Weissberg, Index No. 505522/2026, over equipment and related claims. Defendant admits that action is pending. Defendant denies liability in that action and denies that this Virginia case is a proper vehicle to relitigate it.

**Alleged "campaign" and quoted statements**

11. Defendant denies that he engaged in a "systematic and active campaign" of unlawful or defamatory conduct in retaliation for the New York case. Defendant admits that beginning in or about February 2026 he communicated, including on social media and by email, about Plaintiff's relationship to MKO Systems / the former Oxygen Software business in Moscow, product capabilities, and government-customer risk. Defendant admits those communications followed published reporting, including a Radio Svoboda article and earlier Forbes coverage, and his own work and travel. Defendant denies that the communications were false or made with actual malice.

12. Subpart (a): Defendant admits he contacted some of Plaintiff's customers and others and stated that Plaintiff is tied to MKO Systems and subject to Russian security-sector regulation and historical Russian-state customers. Defendant denies that he alleged the FSB holds equity in Oxygen Forensics, Inc. Defendant denies falsity. See Exhibit A regarding MKO Systems, its product lineage, its connection to Oxygen Forensics, and evidence of Russian-state customers.

13. Subpart (b): Defendant admits he described Plaintiff's tools as "hacking software" or similar. Defendant was specifically told by an Oxygen Forensics employee Neil Solt in a recorded conversation, (included in Exhibit A on page 56), "Do we have hackers on our staff? Absolutely. Quite honestly, our software is hacking software when you really get

down to it." Oxygen Forensics employee Neil Solt also explained, on camera, that the software has "built-in malware." (see Exhibit A, page 56).

14. Subpart (c): Defendant admits he contacted some employees about the company's Russian ties and about government scrutiny. Defendant denies telling employees they would be "imminently arrested," except to the extent he expressed a belief that the company faced investigation. Denied as false or malicious.

15. Subpart (d): Defendant admits he posted a YouTube video later set to private. Defendant denies that the video is a "false story." The video states Defendant's conclusions from public records, employment observations, interviews, and published reporting. See Exhibit A.

16. Subpart (e): Defendant admits posting on Reddit under usernames associated with him, including in forums concerning digital forensics and whistleblowing. Defendant denies falsity. Defendant admits some posts were later deleted; comments may remain.

17. Subpart (f): Defendant admits posting on LinkedIn and Facebook. Defendant denies falsity. Defendant admits he removed at least one post.

18. As to the specific quotations Plaintiff attributes to Defendant in the YouTube video and Reddit posts (Brief ¶ 16(a)–(s)):

Defendant admits he made statements substantially to the effect of several of the quoted sentences, including that he concluded Plaintiff is controlled from Russia through MKO Systems; that programming and major product decisions were directed from Russia; that MKO / historical Oxygen Software tools have been used by Russian security services; that Eduard Bendersky has been reported as connected to the broader holding story; that customers are not told the Russian lineage; and that Law 188-FZ is part of the regulatory picture affecting the source code of Oxygen

Forensics' software programs. Defendant denies that each quotation is verbatim or complete, and denies any quotation he did not make.

Defendant denies that those statements are false in substance. Corporate registries, trademark records, archived oxygensoftware.ru client pages, product correspondence (Mobilniy Kriminalist / Oxygen Forensic Detective; Enterprise / Remote Explorer), and Plaintiff's own disclosure of a Cypriot parent are set out in Exhibit A. "Controlled by the FSB" and "Russian front" and "Russian intelligence operation" are Defendant's characterizations of regulatory reach, historical state customers, and beneficial-ownership opacity—not a claim of a recorded FSB stock certificate. Those characterizations are opinion on a matter of public concern, or substantial truth, or both.

Defendant denies the quotations about "Lee Reiber" being "paid to hide the truth" or "going to prison" to the extent they are offered as statements of verifiable crime; they are rhetorical opinion. Defendant denies that he stated, as a fact of present U.S. product sales, that Plaintiff currently licenses tools to the FSB if that is not what the public record shows; his point is the Oxygen Foreniscs / MKO / Oxygen Software / Russian-state customer record and product lineage. See Exhibit A for details on the Russian FSB's ties to Oxygen Forensics.

Defendant denies that the timing of his speech was "intentional and directed retaliation" for court filings, a Virginia unemployment denial, or a cease-and-desist letter. Defendant admits some posts followed those events. Defendant began posting after important published journalism, in particular a Radio Svoboda news report mentioning Oxygen Forensics published February 13, 2026, not after being served notice of any lawsuit. In any case, speech after a lawsuit or a demand letter is not, without more, evidence of falsity.

19. Defendant admits Plaintiff demanded return of laptops. Defendant admits he did not return them and that Plaintiff filed the New York case in mid-February, 2026. Defendant denies he "ignored" demands after an unconditional promise; he retained the devices as evidence for investigators.
20. Defendant admits that after the New York filing he communicated with customers, employees, and on social media as described in general terms. Defendant denies a "campaign" of falsity. In every or nearly every instance Defendant can recall, a published journalistic news article accompanied communications.
21. Defendant lacks knowledge of the internal "inquiries" Plaintiff received from customers or of any DHS memorandum, and denies that any such memorandum was authored by him. Defendant admits he created and circulated a flyer and LinkedIn comments linking published Radio Svoboda / related reporting. Defendant admits the gist of several February 2026 LinkedIn comments that tagged Plaintiff, employees, or conference organizers and linked news articles. Defendant denies falsity and denies "aiding and abetting" accusations as anything other than opinion and hyperbole.
22. Defendant denies that he filed or prosecuted an unemployment claim before the Virginia Employment Commission or appeared before that commission. Defendant applied in New York. Paragraph 22 of the Brief is denied.
23. Defendant admits additional Reddit posts and a June 2026 YouTube video, an email to an international client in July 2026, and an email to employees and New York counsel. Defendant denies that those communications were false or that "ransomware capabilities" was a fabricated charge rather than a comment on Oxygen Forensics own court admission

that they could remotely delete a computer that their software was installed on. Defendant admits he said further publication might follow.

24. Defendant admits receipt of an August 4, 2026 letter from Femida.us. Defendant denies that the letter establishes falsity or strips privilege from petitions to the government.
25. Defendant admits August 17–18, 2026 social-media comments on his own Facebook page expressing his view that Plaintiff faces federal scrutiny. Those comments are opinion. Defendant admits contacting organizers of an industry event in Australia about the same public-concern issues. Defendant denies falsity.
26. Defendant admits he left a heated voicemail for Alexander Chizhik, Esq., after the cease-and-desist letter. Defendant denies any threat of unlawful harm. The voicemail is not an element of defamation of Plaintiff.
27. Defendant denies that Plaintiff's alleged lost contracts, paused pilots, or lost goodwill were caused by false statements by Defendant rather than by independent reporting, customer due diligence, or Plaintiff's own disclosures. Causation and damages are denied.
28. The same denial of causation and damages is repeated.
29. Defendant notes Plaintiff's categorical denial of FSB ownership, Russian relationships, and sales to the Russian government. Defendant does not claim record FSB equity in the Virginia corporation. Defendant stands on Exhibit A as to MKO Systems, Oxygen Software, archived Russian-client pages, product lineage, and the Cypriot parent. Plaintiff's denial is not binding on Defendant.
30. Defendant denies that he tortiously interfered with contracts or expectancies.

**Counts and prayer**

31. The legal-standard paragraphs in the Complaint and Brief state conclusions of law to which no response is required. To the extent a response is required, they are denied.
32. Defendant denies Count I (defamation), including falsity, fault, lack of privilege, defamation per se, actual malice, and damages.
33. Defendant denies Count II (tortious interference), including improper methods, causation, and damages.
34. Defendant denies that Plaintiff is entitled to any injunction, damages, punitive damages, or other relief. The proposed injunction is a prior restraint.

Any remaining allegation in the Complaint not specifically admitted is denied.

## III. AFFIRMATIVE DEFENSES

1. Failure to state a claim. Fed. R. Civ. P. 12(b)(6).
2. Substantial truth. Jordan v. Kollman, 269 Va. 569 (2005).
3. Opinion, rhetorical hyperbole, and non-actionable viewpoint. Chaves v. Johnson, 230 Va. 112, 119 (1985).
4. Public-concern speech protected by the First Amendment. Actual malice is not pleaded and cannot be proved.
5. Privilege and Petition Clause / Noerr-Pennington protection for communications to OFAC, BIS, law enforcement, Inspectors General, and Congress, including Exhibit A.
6. Immunity under Va. Code § 8.01-223.2 for good-faith statements on a matter of public concern communicated to third parties.
7. No improper methods as required for interference with at-will contracts or expectancies. Duggin v. Adams, 234 Va. 221 (1987); Dunlap v. Cottman Transmission Sys., LLC, 287 Va. 207 (2014).

8. Justification and competitor's / public-interest privilege.
9. Lack of causation. Independent journalism and customer due diligence.
10. Lack of damages, speculative damages, and failure to mitigate.
11. Unclean hands and in pari delicto, to the extent Plaintiff concealed Russian lineage from government buyers.
12. Prior restraint / First Amendment bar to the injunctive relief demanded.
13. Failure to join necessary parties, including the Cypriot parent identified in Plaintiff's Rule 7.1 statement.
14. Reservation. Defendant reserves all defenses that discovery may reveal.

## IV. COUNTERCLAIMS

The Court has supplemental jurisdiction under 28 U.S.C. § 1367.

### Facts common to the counterclaims

1. Defendant reported, and prepared reports of, information he reasonably believes shows product lineage with OOO MKO Systems, historical Russian-state customers of that product line, opaque beneficial ownership through a Cypriot company, and supply-chain risks for U.S. government buyers. Exhibit A is part of that reporting.
2. After termination, Defendant applied for unemployment insurance in New York.
3. Plaintiff opposed benefits. Defendant alleges the opposition included false or materially misleading statements of misconduct, made because Defendant would not suppress the information above.
4. New York benefits were cut off. Defendant claims about $18,249 in lost benefits plus related harm.

5. This lawsuit followed Defendant's contacts with federal authorities and his effort to have Treasury consider action against MKO Systems.

**Count I — Retaliation for protected disclosures**

(41 U.S.C. § 4712, to the extent Plaintiff is a covered contractor, and Virginia public policy / Va. Code §§ 8.01-223.2 and 40.1-27.3)

1. The common allegations are realleged.
2. Section 4712 prohibits covered contractors from discriminating against an employee for disclosing to listed federal recipients information the employee reasonably believes evidences specified contract-related misconduct or a substantial and specific danger. Upon information and belief, Plaintiff sells to executive-branch agencies under federal contracting vehicles.
3. Adverse actions followed the disclosures, including opposition to unemployment benefits and this action aimed at stopping further contact with federal officials and customers.
4. Defendant will pursue any required Inspector General complaint and asks that this count not be dismissed with prejudice before that process can be completed or excused.

**Count II — Interference with statutory benefit expectancy**

1. The common allegations are realleged.
2. Defendant had a New York unemployment-insurance expectancy. Plaintiff knew of the application.
3. Plaintiff wrote in a November 5th, 2025 cease and desist letter sent by Oxygen Forensics lawyer Nicholas Hantzes to Defedendant that "Following your separation, the Company notified you that it would not to contest your claim for unemployment benefits to assist in you during the transition to future employment." See Exhibit B for this letter.

4. Plaintiff interfered through alleged false statements of misconduct to adjudicators, not through good-faith participation in a statutory process.
5. Pecuniary loss followed. Ordinary truthful employer participation in UI is not this claim.

**V. PRAYER**

Defendant asks the Court to:

1. Dismiss the Complaint with prejudice, or enter judgment for Defendant;
2. Deny all injunctive relief;
3. Recognize immunity under Va. Code § 8.01-223.2 and award costs as just;
4. Enter judgment on the counterclaims for compensatory damages in an amount to be proved;
5. Grant such other relief as is just.

Dated: September 10, 2026

Respectfully submitted,

/s/ Max Weissberg
Max Weissberg, Pro Se
343 20th Street, Apartment 4
Brooklyn, New York 11215
tovareeshmakc@gmail.com | (917) 378-3000

**CERTIFICATE OF SERVICE**

I served this Answer and Exhibit A on Alexander Chizhik, Esq., and Kevin R. Garden, Esq., Femida.us, 66 Canal Center Plaza, Suite 505, Alexandria, Virginia 22314, by the method required by the Federal Rules and the Local Rules, including CM/ECF if authorized, and otherwise by email and mail.

/s/ Max Weissberg

**LOCAL RULE 83.1(N) CERTIFICATION**

I declare under penalty of perjury that:

☐ No attorney has prepared, or assisted in the preparation of, this document.

**OR**

☐ The following attorney prepared or assisted in the preparation of this document:

Name of Attorney: ________________________________

Address of Attorney: ________________________________

Telephone Number of Attorney: ________________________________

Name of Pro Se Party (print or type): Max Weissberg

Signature of Pro Se Party: ________________________________

Executed on: September 10, 2026

**EXHIBIT LIST**

Exhibit A — Memorandum & Dossier for Sanctions Consideration to OFAC / BIS, dated September 10, 2026 (OOO “MKO Systems”).

Exhibit B – Letter from Nicholas Hantzes to Max Weissberg, dated November 5th, 2025.